**TRUCKING, Inc., v. KROTZER.**
**No. 8015.**

Circuit Court of Appeals, Sixth Circuit.
Sept. 18, 1939.

William A. Finn and W. W. Campbell, both of Toledo, Ohio (William A. Finn and W. W. Campbell, both of Toledo, Ohio, on the brief), for appellant.

George R. Effler, of Toledo, Ohio (Fraser, Effler, Shumaker & Winn and George R. Effler, all of Toledo, Ohio, on the brief), for appellee.

Before HICKS, HAMILTON, and ARANT, Circuit Judges.

ARANT, Circuit Judge.

This is an appeal from a judgment for $10,000 recovered in an action brought by appellee for injuries sustained in a collision between his automobile and appellant's truck.

The collision occurred about one o'clock A.M. on May 21, 1936, on U. S. Highway No. 20, in Sandusky County, Ohio. Appellee was driving his Ford automobile in a westerly direction, and appellant's tractor and trailer were being driven easterly, by its employe, Forrest McClain. The vehicles sideswiped in passing, and appellee's left arm was so injured that immediate amputation was necessary. Appellant denied that it was negligent and alleged that appellee's injuries were the result of his own negligence. The principal dispute is as to whether there was substantial evidence that the collision was proximately caused by the negligence of appellant's driver in driving the tractor and trailer on the north, or wrong, side of the center of the highway when the collision occurred. Appellant claims that the left side of appellee's automobile was on the south, or wrong side, of the center of the road, and appellee claims that his car was entirely on the north side of the center. Appellant moved for a directed verdict when appellee rested, and again when all the evidence was in. After the jury brought in its verdict, appellant moved for a judgment notwithstanding the verdict, and later moved for a new trial.

The denials of these motions are assigned as errors. Inasmuch as each involves merely the question whether there was substantial evidence that appellant's tractor was on the north side of the center of the road when the collision occurred, they may be considered and disposed of together.

Appellee testified, in part, as follows:

"I did not at any time before the impact drive my car over onto the southerly side of that highway. I imagine I was driving a foot or foot and a half to the north of the center line when I first observed this truck coming. I at all times until the moment of impact remained on that side of the highway, and on that side of the center line of the highway.

"When I observed the left front headlights of the tractor to the left of the center of the highway, I was on the right side of the road. I changed my course as I came down towards the trailer. I just turned it over maybe a foot. I figured I was two or three feet on my side of the line. * * * I gradually turned over a little bit to my right.

"When the contact took place between the left side of my car and the left front corner of the trailer, my car was right along the edge of the new paved surface of the new highway, U. S. 20. It was all on the highway."

Jeanette Krotzer, appellee's sister, seated in the front with him when the collision occurred, testified:

"Then I saw this truck coming down the road. I noticed its lights awfully bright. The left headlight of the truck was over across the center line. It seemed to be over on my side of the road. My brother flickered his lights. He did not get any response. The truck did not move over. Then he tooted his horn and the truck moved over to his side a way; and just as it got even with us, the truck went right towards us or swerved right towards us.

"Our right wheels were over on the extreme edge of the concrete highway. They were not off the highway. * * * The collision occurred when the truck came upon us. The front part of our car was hit by the trailer part of the truck, and the cabin part of the tractor hit the back part of our car; it just sideswiped the back part."

Deputy Sheriffs F. H. Paul and Win Tanner Gottron, who investigated the accident and arrived at the scene shortly after it occurred, testified that the only skid marks appearing on the highway were those of the Ford leading from the point of impact to the point where it came to a stop; that there were two such skid marks about five feet, or the width of the Ford, apart; and that these skid marks at the point of impact were both on the north side of the highway. They also testified that the broken glass on the highway was to the north of its center line, and the evidence showed that the glass on the left side of the tractor cab and on the left side of the Ford was broken.

Deputy Paul testified:

"I observed skid marks on the highway running to the east from the point where I saw this Ford, in a sort of semi-circle to the northeast. They were about 115' from where the car set to where the first mark was on the pavement. They were continuous. They started to the north side of the center line of the pavement, it must have been around twenty inches or better; twenty-four. There was a well defined center line on this highway. At the point to the east, where these skid marks started, there were no marks whatsoever on the south side of the center line, that I could see; * * *

"I have seen the marks to which you call my attention, upon the highway in Exhibit No. 3. I saw them on Route 20. I saw them on the morning of the 21st, when I went to the scene of the accident with Win Gottron. * * * With respect to these marks, they ended at the Krotzer car, where it set on the old berm. They skidded around up to it.

"There were two marks on the highway. One was a little bit heavier than the other. These two marks I have talked were the width of an automobile; around five feet. Going westerly, the most southerly of the two marks was on the north side of the center line of the highway. Both marks were on the north side of the center line of the highway."

Deputy Gottron testified:

"There were tire marks from the point where the glass was discovered on the pavement which was on the north side of the roadway, and marks led from that point in a southwesterly direction across the pavement and up on the berm where the Ford car had stopped.

"When I first arrived at the scene of the accident, I observed glass in the west

point, or north lane. There was a marked, black center line on this highway. I observed this glass on the north of the center line of this highway."

The foregoing excerpts from the testimony are quite sufficient to show that there was substantial evidence that appellant's tractor and trailer were on the north, or wrong, side of the center of the road when the collision occurred.

Accordingly, we conclude that there was no error in denying the motions.

Appellant's next assignment of error is the admission in evidence of appellee's Exhibit No. 6, a written statement, executed at the request of one of appellee's attorneys by Forrest McClain, on August 9, 1935, after his employment as appellant's driver had terminated. The statement referred to contained the following:

"I worked for the Truckers, Inc., until the latter part of July, 1936, when they told me they could not use me on the road.

"The dispatcher whose name is 'Rudy' said that I would make a better city man than a road man. He said that it was not good when I took a truck out on the road and cracked it up."

Appellant claims that the statement quoted was inadmissible, that it was prejudicial and constitutes, in consequence, reversible error. Appellee points out that appellant's objection was not specific and consequently furnishes no basis for review. Appellant does not deny the principle thus invoked. It urges, however, that this principle is inapplicable, inasmuch as the Court had previously sustained objections to questions propounded to McClain, designed to elicit statements to the same effect as those in the exhibit.

An examination of the record, however, discloses that most of the exhibit objected to was admissible to contradict testimony given by McClain during the trial. It does not appear that the attention of the court was directed to the fact that the exhibit contained the alleged objectionable language, and appellant makes no claim that it requested the deletion of this portion of the exhibit. Unless the court was aware of its inclusion, the factual basis of appellant's contention is lacking. Indeed, the fact that the Court had previously sustained appellant's objection to McClain's oral testimony to the same effect was assurance that the Court would have excluded the ob-

jectionable part of the exhibit if appellant had specified it as the basis of its objection. We are of the opinion that this exception, based upon what we conclude was only a general objection, does not furnish a basis for review.

Appellant also assigns as error the admission of appellee's Exhibit No. 3, a photograph taken two days after the accident and purporting to show the condition of the highway where the collision occurred. It claims that the court erred in admitting this photograph, because it bore certain superimposed marks apparently intended to represent skid marks on the road, whereas the camera had recorded no such marks.

It does not affirmatively appear that the superimposed marks were on the photograph when it was admitted in evidence. At any rate, appellant did not mention them. He objected to the photograph's admission because "there has been no showing when it was taken, by whom, or anything of the kind." On the ground that there had been testimony that "it correctly represented the location and surroundings as they existed immediately after the collision," it was admitted. That the photograph, for the reason stated by the Court, was admissible as a means of portraying to the jury material facts involved in the inquiry is clear. But, if it were otherwise, its admissibility is not reviewable, inasmuch as the ground now urged was not specified at the trial.

Appellant's final assignment of error is the Court's use in his charge of the word "north" where "south" obviously should have been used. In quoting from appellee's testimony, the Court, in his resumé of the case said "that when the truck was about fifty feet away it turned over to its proper side of the highway, that is, on the north side of the center, and that next the left side of his car scraped the side of the trailer." Counsel for appellant observed that he thought the Court meant to say the south side of the highway, to which the Court replied: "The Court will allow his statement to stand as he made it to the jury. He has cautioned the jury. He is human. The jury must in the final analysis accept its own conclusion as to what was said. The Court merely gave the jury a summary of the testimony of each witness, centered chiefly upon the point in controversy, as the Court made his notations at the time it was taken."

We are of the opinion that the Court's obviously inadvertent mistake did not mislead the jury—particularly in view of the Court's warning,—and constitutes no reversible error.

The judgment of the District Court is affirmed.